[Civil No. 1339.   Filed May 28, 1914.]

[141 Pac. 120.]

SANTA CRUZ RESERVOIR COMPANY, a Corporation, Appellant, v. MANUEL S. RAMERIZ, H. J. RAMERIZ, JOAQUIN A. SALAZAR, PERFECTO A. SALAZAR, JUAN A. SALAZAR, R. A. SALAZAR, T. A. SALAZAR, F. A. SALAZAR, E. A. SALAZAR, FRANCISCO SALAZAR, JUAN A. SALAŻAR, and DOLORES SALAZAR, Appellees.

1. Waters and Watercourses—Appropriation of Water for Irrigation—Rights of Parties.—Where plaintiff had acquired the right to use flood waters to irrigate his land, and defendant had acquired the right to appropriate the balance of the flood waters, plaintiff's right extended only to the waters reaching his land for distribution, and he had no vested right to employ means of a wasteful nature to deliver water to his land.

2. Waters and Watercourses—Appropriation for Irrigation—Extent of Right.—In determining the amount of flood waters appropriated for irrigation, the court may determine the area of lands to which the water has been beneficially applied, the frequency with which floods occur, the waters from which reached the lands of the appropriator, and any other facts bearing on the question of the quantity of water actually appropriated to a beneficial use, and the right of the appropriator is limited to the water actually so appropriated.

3. Waters and Watercourses—Appropriation of Water for Irrigation—Extent of Rights Acquired.—In a suit involving the extent of rights to flood water appropriated for irrigation, evidence *held* not to sustain a finding fixing the quantity of water to which the appropriator was entitled.

4. Waters and Watercourses—Appropriation for Irrigation—Rights of Parties.—Where a prior appropriator of flood waters for irrigation wasted water in excess of his requirements for irrigation, a subsequent proprietor entitled to the balance of the flood waters could save the waste and apply the same to a beneficial use, provided he did not thereby interfere with the rights of the prior appropriator, and the subsequent appropriator could employ means at his own expense to deliver to the prior appropriator the quantity of water to which he was entitled, and prevent the loss, and use the surplus for irrigation.

5. Waters and Watercourses—Appropriation of Water—Rights of Prior and Subsequent Appropriators—Equitable Relief.—Where

a prior appropriator of flood waters for irrigation wasted water in excess of his requirements, and a subsequent appropriator entitled to the balance of the waters could prevent the waste, a decree in a suit to determine the rights of the parties should restrain the subsequent appropriator from diverting waters to which the prior appropriator was entitled, but should permit the subsequent appropriator to provide means of transporting plaintiff's water to his land and prevent the waste.

6. Waters and Watercourses—Appropriation of Waters—Rights of Prior and Subsequent Appropriators—Equitable Relief.—Where, in a suit to determine the rights of prior and subsequent appropriators of flood waters for irrigation, the court gave to the subsequent appropriator the right to construct ditches for the diversion of the water to which the prior appropriator was entitled, and thereby save water lost by the means employed by the prior appropriator, the subsequent appropriator exercising the privilege must furnish means for the distribution to the prior appropriator of the waters to which he is entitled, and, until such means are furnished and are proved effective, the prior appropriator's works must remain unobstructed to carry water to him.

[As to right of appropriation of water for irrigation purposes, see notes in 98 Am. Dec. 542; 20 Am. St. Rep. 225. As to what constitutes appropriation of water, see note in 60 Am. St. Rep. 799. As to respective rights of appropriators and riparian owners, see notes in 43 Am. Dec. 269; Ann. Cas. 1913E, 709.]

APPEAL from a judgment of the Superior Court of the County of Pinal. J. E. O'Connor, Judge. Modified and remanded with instructions.

STATEMENT OF FACTS BY THE COURT.

The appellees, as plaintiffs, commenced this action for the purpose of restraining the appellant, the defendant, from obstructing the flow of the flood waters of the Santa Cruz river, and diverting such flow from the lands of plaintiffs, thereby depriving plaintiffs of the use of such waters in the irrigation of their lands. It is alleged that plaintiffs own, in the aggregate, about 1,200 acres of land, capable of receiving the flood waters in question. The said waters appropriated by plaintiffs since 1894 were controlled by and applied to plaintiffs' lands by means of dikes collecting the waters into an artificial ditch or canal, and from the points where collected, about a mile north of the lands, connected through such ditch or canal to the lands of plaintiffs and by means

of laterals distributed over such lands in the usual manner. The Santa Cruz river channel carries the flood waters in their natural flow to the level grounds from a southerly direction, and empties upon such level grounds at about the points where plaintiffs have constructed their dikes and embankments. The defendant, in the year 1909, constructed a dam across the channel of the river at a point about 10 miles south and above the said dikes, and thereby diverted the flood waters or a part thereof into a reservoir provided by it through a ditch. The floods, when they come down the river, usually appear during the months of July and August. When they come in sufficient quantities, the water flows in the plaintiffs' ditch, if unobstructed, from a few hours to several days, depending upon the duration and extent of the rainfall at the source and along the course of the river. At times the flow of water has been in excess of the needs of the plaintiffs, and has been allowed to pass beyond their lands. When water is flowing in abundance, and the ditch is carrying to its capacity, all the lands in question to which the water has been applied can be irrigated once in from 10 to 12 hours. The carrying capacity of the ditch to plaintiffs' lands is 168 second-feet flow. The court finds that the plaintiffs are entitled to 168 second-feet running continuously 17 hours through their ditch during all of the times of said flow, until that amount of water shall have been delivered to plaintiffs at their said ditch at the place of diversion. A decree is rendered accordingly, from which, and from the order refusing a new trial, defendant appeals. It assigns as error the insufficiency of the evidence to support the findings of fact in the following particulars: That plaintiffs constructed a ditch in the year 1894 having a capacity of 168 second-feet; that the ditch was constructed from a point on the river where there is a defined channel; that the appellees diverted the waters by means of a dam placed in the river channel; that the appellees diverted all the normal flow of the river and conducted it to their lands; that the water was distributed over the lands; that the lands have been irrigated and made productive; that the appellant first appropriated the waters in 1909; that the appellant by its dam diverted practically all of the waters, and thereby stopped the natural flow to appellees' lands; that the amount of water necessary for

irrigation of appellees' lands is 168 second-feet for 17 hours; that appellees have appropriated to a beneficial use 168 second-feet of water; that the court erred in failing to find that appellant was the owner of the use of waters to the extent of 10,000 miner's inches at appellant's dam—such water as would not have reached appellees' lands in the absence of the dam of appellant. These facts are otherwise assigned, but amount, in effect, to the same as stated.

Mr. S. L. Kingan, for Appellant.

Mr. Wiley E. Jones and Mr. R. L. Chamlee, for Appellees.

. CUNNINGHAM, J.—The appellant summarizes the issues as follows: "The real issues were: . . . How much water are appellees entitled to the use of, and when are they entitled to its use."

One fact is settled beyond dispute, and that fact is that the appellees are entitled as a right to the amount of flood waters needed for the irrigation of their lands, measured by the capacity of their ditch or canal to deliver to the lands for that purpose, and has delivered prior to and up to the date of appellant's appropriation. Appellant concedes this right exists, and the right is otherwise clear. The difficulty lies, not in determining appellees' rights, but in determining the extent of the right and the manner in which the form of a decree by which that right shall be protected to them. Appellant's right to appropriate all of the flood waters not otherwise appropriated by plaintiffs is equally clear. Its right extends to the appropriation of all the flood waters that would not reach appellees' lands by their normal flow, and all the surplus waters not needed or appropriated by appellees, although such surplus waters may by their normal flow reach appellees' lands, for the reason appellees have not appropriated either of such flows of water. Again, the difficulty does not lie in determining appellant's rights, but in determining the extent of such rights and devising a plan by which such rights can be preserved.

The local conditions entering into the matter cause the difficulties to arise. The plan or system adopted by the trial court was to determine the carrying capacity of appellees' .

ditch at the point of diversion, and determine the length of time required to irrigate appellees' entire area of. lands from the capacity flow of the canal. The court determined that the carrying capacity of the appellees' canal is 168 second-feet of water, and the time required to irrigate appellees' lands is 17 hours of a continuous flow of the canal at its full capacity. The trial court then found, in effect, that any obstruction of the channel of the river 10 miles above, by means of a dam such as appellants had constructed, has the effect to diminish the flow of water in appellees' canal. Appellees' rights extend only to the water that reaches their lands for distribution. Appellees can have no vested right to employ means to deliver water to their lands that in their nature are wasteful means. In water applied to a useful and beneficial purpose an appropriator acquires a vested right. To so handle water as to cause it to become lost any length of time would not create any rights in the person so causing its loss to continue such extravagant means. Appellees' rights in the flood waters extend to no other of the flood waters than would reach the border of their lands by means employed to conduct it there, and at such point the measurements of the quantities of water to which they are entitled must be made under the peculiar circumstances of this case. When known, appellees are entitled to have this right enforced.

In arriving at the amount of the flood waters appropriated by appellees, it is pertinent to inquire and determine the area of lands to which the water has been beneficially applied, the frequency with which the floods occur, the waters from which reached the lands of appellees, and any other facts that would bear upon the question of the quantity of water actually appropriated by appellees to a beneficial use. All such matters existing may be presumed to have been inquired into.

The court finds that the entire area of appellees' lands requires 168 second-feet running continuously for 17 hours. This must be construed as finding that appellees have applied the waters in question to irrigate all their lands, aggregating from the evidence 1,120 acres. The evidence of the amount of the entire area of land owned by appellees is that Manuel S. Rameriz owns 320 acres. He had 160 acres in cultivation

up to 1908. The most this party ever had planted in the summer months was 80 to 90 acres. The 160 acres in pasture has been irrigated when water was not needed for the other lands. Henry J. Rameriz cultivated 150 acres of land. He owned 160 acres. P. A. Salazar testified that the Salazar family had in cultivation about 250 acres. They are alleged to own 480 acres. Angulo once owned 160 acres, and cultivated 30 acres; he has sold his lands to defendant. The plaintiffs' evidence is that they cultivated 590 acres by use of the water and at times applied surplus water to 160 acres of pasture used for feed, making a total of 750 acres to which any claim supported by evidence is made that the water in question has ever been applied. The finding of the court is that the entire lands of plaintiffs require 168 second-feet to irrigate them. Such finding was without the issue, and not in accordance with the evidence. Taking plaintiffs' evidence as true, the question to be determined was the quantity of water required and used to irrigate 750 acres of ground. The witnesses testifying as experts estimated the area of land in cultivation at from 250 to 600 acres, and, upon a basis of land in cultivation, they estimated the quantity of water necessary to irrigate that estimated area in 12 to 14 hours. Plaintiffs' witness Seiboth gave as his expert opinion that 168 second-feet would spread over 550 to 600 acres in from 12 to 14 hours, running continuously. Witness Manning, for defendant, estimated that 250 acres were cultivated, and that 50 second-feet would be sufficient to irrigate that area of ground. Witness Woolf, for defendant, estimated that 300 to 350 acres are cultivated, and it would take 50 second-feet to irrigate 200 acres in 12 hours, or 50 second-feet would irrigate 6½ acres an hour. The plaintiffs offered no testimony tending to show with exactness the length of time required to irrigate their lands from the full flow of the ditch, other than the testimony of Seiboth, and that had reference to the cultivated lands alone. He estimated the largest acreage, and estimated that 168 second-feet would irrigate from 550 to 600 acres running continuously for from 12 to 14 hours. That quantity of water running continuously for 17 hours would irrigate a much larger tract, and hence to that extent the finding is without support in the testimony.

The subject matter of the action is the surplus water not required by plaintiffs to continue to irrigate their lands as has been their practice; such water as has been lost by reason of the means used by plaintiffs to convey the water to their lands and by reason of the amount of flood waters discharged being in excess of the requirements of the plaintiffs. Appellant does not, and cannot, claim any right to deprive plaintiffs of any part of the waters appropriated by them, but it does claim a right to such of the flood waters as it may conserve, and save from running to waste—such water as plaintiffs have not appropriated to any useful or beneficial purpose. The fact is undisputed that large quantities of the flood waters are dissipated while passing in their natural flow from the dam to the lands of plaintiffs. Plaintiffs admit in their testimony, and it otherwise appears from the evidence, that at times great quantities of flood waters have passed over the lands in question to the injury of the crops growing thereon, and have covered a vast area of country beyond these lands. These facts establish a right in defendant to conserve, if it can, such waters, and apply them to a beneficial use. The decree enjoins it from diverting the waters or any part thereof which flow in the channel of the Santa Cruz river above the lands of plaintiffs, and between that certain point on the Santa Cruz river where the defendant's dam is constructed and the point upon said river at which the plaintiffs divert the waters thereof upon their lands. The effect of this part of the decree is to prevent defendant from conserving the waters shown by the undisputed evidence to be entirely lost by evaporation, absorption and other means that pass the dam, but never reach the point of plaintiffs' diversion. In that respect the decree enforces a waste of the most valuable property. It gives nothing of value to plaintiffs, and, if defendant can save such water by means applied, it may apply such means for that purpose. The decree deprives it of the right to do so. Otherwise the decree recognized inferentially defendant's right to retain the surplus flood waters after plaintiffs have received the amount appropriated to their entire area of lands. Plaintiffs cannot rightly insist upon the continuance of a means that causes a waste of the waters not used by them at any time. Their rights are fully protected when water has been delivered to their lands at

the advantageous point now used for that purpose in quantities equal to the amount they have appropriated to a beneficial purpose. The defendant may, if it feels inclined, employ means at its own expense to deliver said quantity of water to plaintiffs' boundary lines in its ditch there, and, if the means result in a saving of water that would otherwise be lost in the transportation by the means at present employed to deliver it to that point, such water so saved from loss would become as a right the property of the defendant. When plaintiffs have received their full share of the flood waters, defendant has a right to the surplus, and has the right to it in its dam. The evidence is not sufficient to support the decree rendered, in the particular that the quantities of lands to which the water has been beneficially applied by plaintiffs, as shown by the evidence, are not made the basis of the extent of the use of the water. The evidence is not otherwise sufficiently full upon which to base a proper decree protecting the equities of the parties, and such rights, to be protected, require further investigation and evidence of other facts. The decree appealed from is evidently erroneous in enjoining the defendant perpetually from diverting any of the waters from the Santa Cruz river between the dam and plaintiffs' point of diversion and until 168 second-feet has flowed 17 hours, or so much longer as is necessary to deliver to plaintiffs its equivalent. From the testimony of all the witnesses the quantity of water mentioned flowing 14 hours would serve plaintiffs' purpose to irrigate the lands cultivated. How long the flow must continue to irrigate 160 acres of pasture is not the subject of any evidence.

Equity would dictate a modification of the decree whereby the defendant company should be restrained from diverting only the waters to which plaintiffs are entitled by reason of their prior appropriation, and such restraining order should not prevent the defendant from providing other means of transporting the water to which plaintiffs are entitled to their lands, and delivering the water in the proper quantities at a point where the same may be distributed by plaintiffs to their lands; such point of delivery to be the point at or near the boundary of the plaintiffs' lands on their canal from which plaintiffs have distributed the water for irrigation, or to some other point from which the water may be distributed with

equal advantage to plaintiffs. Such decree must provide for the protection of plaintiffs' rights, but give to the defendant the privilege of furnishing other and different means of transporting the water to plaintiffs' lands, so that plaintiffs may use the water when delivered in all respects as if their canal delivered the water from the river unobstructed by defendant at any point.

If the defendant elects to exercise its privilege to furnish the means of transporting the water to the point indicated until such means are furnished and prove effective for the purpose, plaintiffs' canal and the channel of the river should remain unobstructed, for the purpose of carrying the water to plaintiffs. 2 Kinney on Irrigation and Water Rights, sec. 801. The peculiar circumstances presented by this case require, however, that the lower court retain jurisdiction over the case until defendant has furnished and completed all means of carrying the water belonging to plaintiffs in the proper quantities as it may elect to undertake. The ordinary equity procedure in such cases is ample to accomplish the purpose, and the lower court is the proper tribunal to employ such procedure in effecting the object to be obtained, viz., the protection of the rights of all the parties to this litigation. Until all the essential facts and conditions are established and the court is convinced that all affirmative action hereafter permitted to be taken by the defendant has worked no injury to the plaintiffs' rights, and the means employed are efficient for the purpose intended, no final decree should be entered so as to oust the lower court of jurisdiction to alter, modify or vacate any order made pending the adoption and installation of any means of transportation of the waters to plaintiffs' lands.

The decree is modified to the extent of enjoining and restraining defendant from diverting such waters of the Santa Cruz river as plaintiffs have appropriated, and from obstructing the flow of the flood waters in the channel of said river until the further order of the court, and until the court has determined the amount of lands to which the flood waters in question have been beneficially applied, and the quantity of water applied to irrigate the said lands, and until defendant has elected to provide another or different means of delivering the water to plaintiffs' lands, and has actually completed

such means, and such means so furnished are sufficient and efficient to accomplish the purpose for which they are in-tended and employed. The cause is remanded, with instruc-tions to the lower court to enter such temporary decree, and take such further proceedings as equity and justice demand.

FRANKLIN, C. J., and ROSS, J., concur.

NOTE.—On the question of the right of prior appropriator of water, see note in 30 L. R. A. 665.

For the correlative rights of upper and lower proprietors to use water for irrigation, see note in 41 L. R. A. 741.

As to the care necessary to avoid waste in diverting water from stream under right of appropriation, see note in 15 L. R. A. (N. S.) 238.